IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

|  |  |
|---|---|
| JEREMY D. TURNER,<br><br>        Plaintiff,<br><br>   v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security Administration,<br><br>        Defendant. | Case No. 1:10-cv-115-SA<br><br><br>**MEMORANDUM DECISION AND ORDER** |

Before the court is an action filed by Plaintiff, Jeremy D. Turner, asking the court to reverse the final agency decision denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. *See* 42 U.S.C. §§ 401-434, 1381-1383f. The Administrative Law Judge ("ALJ") found that Plaintiff was capable of performing his past relevant work as a security guard and sales representative, as well as other jobs in the national economy; as a result, the ALJ determined that Plaintiff was not disabled. Plaintiff challenges these findings, arguing that they are not supported by substantial evidence and that they are based on significant legal errors.

Having carefully reviewed and considered the ALJ's decision, the record, and the parties' pleadings, the court concludes that the ALJ's decision is not legally erroneous and is supported by substantial evidence.

## BACKGROUND

On April 10, 2007, Plaintiff applied for Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act, alleging a disability onset date of July 5, 2006 (Doc. 7, the certified copy of the transcript of the entire record of the administrative proceedings relating to Jeremy D. Turner (hereafter "Tr. __") 179-185, 186-192). Plaintiff's applications were denied initially and upon reconsideration (Tr. 111-113, 114-116). Then Plaintiff requested a hearing before an ALJ (Tr. 117). That hearing was held on January 8, 2009 (Tr. 22). The ALJ issued a written decision on May 13, 2009, determining that Plaintiff was not disabled within the meaning of the Act from July 5, 2006, through the date of the decision, May 13, 2009 (Tr. 9, 12-21). Plaintiff then filed a request for review of the ALJ's decision, which was denied on June 3, 2010 (Tr. 1-2), making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); 20 C.F.R. §§ 404.981, 416.1481.

On July 26, 2010, after receiving the Appeals Councils' denial of his request for review, Plaintiff filed his complaint

in this case, which was assigned to United States District Judge Dee Benson. (Doc. 3.) On October 7, 2010, the Commissioner filed his answer, along with the Administrative Record. (Docs. 6, 7.)

Plaintiff filed his opening brief on November 5, 2010 (Doc. 12), the Commissioner filed his answer brief on December 3, 2010 (Doc. 13), and Plaintiff filed his reply brief on December 21, 2010 (Doc. 14).

On March 28, 2011, the parties consented to jurisdiction by a United States Magistrate Judge, including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit, under 28 U.S.C. § 636(c) and rule 73 of the Federal Rules of Civil Procedure. The case was then reassigned to United States Magistrate Judge Samuel Alba. (Doc. 20.)

## STANDARD OF REVIEW

The court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotations and citations omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (citation omitted), and "requires more than a scintilla but less than a preponderance," *Lax*, 489 F.3d at 1084. The Commissioner's findings, "if

3

supported by substantial evidence, shall be conclusive." 42
U.S.C. § 405(g). "In reviewing the ALJ's decision, [this court
may] neither reweigh the evidence nor substitute its judgment for
that of the [ALJ]." *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th
Cir. 2006 (quotations and citation omitted). "The failure to
apply the correct legal standard or to provide this court with a
sufficient basis to determine that appropriate legal principles
have been followed [are] grounds for reversal." *Jensen v.
Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (quotations and
citation omitted).

A five-step evaluation process has been established for
determining whether a claimant is disabled. *See* 20 C.F.R. §§
404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Williams v.
Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-
step process). If a determination can be made at any one of the
steps that a claimant is or is not disabled, the subsequent steps
need not be analyzed. *See* 20 C.F.R. §§ 404.1520(a)(4),
416.920(a)(4).

> Step one determines whether the claimant
> is presently engaged in substantial gainful
> activity. If [the claimant] is, disability
> benefits are denied. If [the claimant] is
> not, the decision maker must proceed to step
> two: determining whether the claimant has a
> medically severe impairment or combination of
> impairments. . . . If the claimant is unable
> to show that his impairments would have more
> than a minimal effect on his ability to do
> basic work activities, he is not eligible for
> disability benefits. If, on the other hand,
> the claimant presents medical evidence and

4

> makes the *de minimis* showing of medical
> severity, the decision maker proceeds to step
> three.

*Williams*, 844 F.2d at 750-51 (quotations and citations omitted);
*see* 20 C.F.R. §§ 404.1520(a)(4)(i)-(ii), 416.920(a)(4)(i)-(ii).

"Step three determines whether the impairment is equivalent
to one of a number of listed impairments that . . . are so severe
as to preclude substantial gainful activity . . . . If the
impairment is listed and thus conclusively presumed to be
disabling, the claimant is entitled to benefits.  If not, the
evaluation proceeds to the fourth step . . . ."  *Williams*, 844
F.2d at 751 (quotations and citations omitted); *see* 20 C.F.R. §§
404.1520(a)(4)(iii), 416.920(a)(4)(iii).  At the fourth step, the
claimant must show that the impairment prevents performance of
his "past relevant work."  20 C.F.R. §§ 404.1520(a)(4)(iv),
416.920(a)(4)(iv).  "If the claimant is able to perform his
previous work, he is not disabled."  *Williams*, 844 F.2d at 751.
If, however, the claimant is not able to perform his previous
work, he "has met his burden of proof, establishing a prima facie
case of disability."  *Id.*

At this point, "[t]he evaluation process . . . proceeds to
the fifth and final step."  *Id.*  At this step, the burden of
proof shifts to the Commissioner, and the decision maker must
determine "whether the claimant has the residual functional
capacity [("RFC")] . . . to perform other work in the national
economy in view of his age, education, and work experience."

*Id.; see* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If it is determined that the claimant "can make an adjustment to other work," 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), he is not disabled. If, on the other hand, it is determined that the claimant "cannot make an adjustment to other work," 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), he is disabled and entitled to benefits.

## ANALYSIS

Plaintiff makes four main arguments in challenging the ALJ's decision: (1) the ALJ erred by failing to properly determine whether Mr. Turner met or equaled Listing 12.04; (2) the ALJ failed to properly evaluate the opinions of Mr. Turner's treating physicians; (3) the ALJ erred by failing to properly assess Mr. Turner's RFC; and (4) the ALJ erred by failing to ask a hypothetical question that was supported by the record. The court addresses each of these arguments in turn.

### A. Listing 12.04

First, Plaintiff challenges the ALJ's finding at step three of the analysis that Plaintiff did not meet a listed impairment. Specifically, Plaintiff argues that the ALJ committed reversible error in finding that Mr. Turner's impairments did not meet or equal Listing 12.04, concerning affective disorders.

At step three of the five-step disability analysis, the ALJ must determine whether any medically severe impairment, alone or in combination with the other impairments, meets or is equivalent

to any of a number of listed impairments that are so severe as to preclude substantial gainful activity. *See* 404 C.F.R. § § 404.1525-404.1526 & pt. 404, subpt. P, app. 1; *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005). The claimant has the burden to present evidence establishing that his impairments meet or equal a listed impairment. *See id.* To meet a listing, a claimant must show that his impairment "satisfies all of the criteria of that listing, including any relevant criteria in the introduction, and meets the duration requirement." 20 C.F.R. § 404.1525(c)(3). To equal a listing, a claimant must show medical findings of "equal medical significance" to the required criteria. 20 C.F.R. § 404.1526(B)(1)(ii).[1]

To satisfy Listing 12.04, a claimant must present evidence meeting the requirements of both parts A and B of the listing, or of part C. *See* 404 C.F.R. pt. 404, subpt. P, app. 1, § 12.04. The Commissioner concedes that Plaintiff's medical evidence of current bipolar syndrome satisfies part A of Listing 12.04; the issue is whether Plaintiff's medical evidence satisfies either part B or part C.

To satisfy part B, Plaintiff must present evidence of at least two of the following: (i) marked restriction in activities of daily living; (ii) marked difficulties in maintaining social

---

[1]Although the Title XVI regulation differs in part, it does not differ in any way material to the above analysis. *See* 20 C.F.R. § 416.926.

functioning; (iii) marked difficulties in maintaining concentration, persistence, or pace; or (iv) repeated episodes of decompensation, each of extended duration. *See id.* The ALJ found that the evidence presented did not satisfy the requirements of part B. Regarding part B, the ALJ found that Plaintiff had "mild restriction in activities of daily living; moderate difficulty maintaining social functioning; moderate difficulty maintaining concentration, persistence or pace; and no episodes of enduring decompensation." (Tr. 16.)

The court has carefully reviewed Plaintiff's arguments challenging the ALJ's part B finding and concludes they lack merit. Although the ALJ partially based his finding on the fact that Plaintiff was not admitted to the ER and was evaluated to be only a mild-moderate risk of self harm at that time, the ALJ also based his decision on other factors. For example, the ALJ noted Plaintiff's GAF score over the past year was 55, indicating only moderate impairment. Also, the ALJ noted that at the July 28, 2006 visit, Plaintiff had only mild symptoms and difficulty focusing a little bit. Although at the August 25, 2006 visit Plaintiff was having more problems and cycling a lot, after his medications were adjusted, Plaintiff was doing significantly better. The ALJ noted that in May 2009 Plaintiff was started on Prozac because he had done very well with Prozac in the past, and in October 2008 Plaintiff was not taking any medications and was doing well. (Tr. 16.) Based on these observations, the ALJ

noted that "though there is clearly some variation of mood, it does not appear in the record to be out of control," and points to when Plaintiff went to the ER with suicidal thoughts in July 2006 to illustrate that when it would seem Plaintiff had more marked symptoms, he instead was still evaluated as being only mild-moderate in severity. (*Id.*) Based on these observations, the ALJ determined that Plaintiff's overall functional impairment was "moderate at most." (*Id.*) Thus, the ALJ set forth substantial evidence in the record to support his part B finding.[2]

The court next turns to Plaintiff's argument regarding part C of Listing 12.04. As relevant here, to meet part C of Listing 12.04, the medical evidence must establish chronic affective disorder of at least two years' duration and a residual disease process resulting in "such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate." 404 C.F.R. pt. 404, subpt. P, app. 1, § 12.04.

---

[2]In his opening brief, Plaintiff relies exclusively on Dr. Houston's testimony in arguing that his impairments satisfied Listing 12.04; however, as the Commissioner points out, Dr. Houston's testimony did not establish that Plaintiff satisfied either the part B or part C criteria of Listing 12.04. Regarding the B criteria, Dr. Houston explained that Plaintiff had moderate to marked limitations in two areas, which fluctuated over time depending on his mood and medication; Dr. Houston did not testify that Plaintiff had marked limitations in two areas at the same time or on a sustained basis. Thus, Dr. Houston's testimony supports that Plaintiff experienced some of the requisite part B criteria some of the time, but that he did not experience all of the criteria at the same time or for a sustained basis, as required by the listing. *See* 20 C.F.R. § 404.1525(c)(4).

The ALJ's part C analysis was as follows:

> The undersigned has also considered whether
> the "paragraph C" criteria are satisfied.  In
> this case, the evidence fails to establish
> the presence of the "paragraph C" criteria.
> There is no evidence that the claimant meets
> the "C" criteria.

(Tr. 16.)  Although this analysis of the C criteria is inadequate
because it is conclusory, that error is harmless because claimant
has not shown that her impairments meet the "C" criteria.  *See*
*Fischer-Ross v. Barnhart*, 431 F.3d 729, 733-34 (10th Cir. 2005).
Plaintiff asserts that Dr. Houston provided "uncontroverted
testimony that the 'C' criteria are met" (Doc. 12, at 10);
however, the record does not support that assertion.  What Dr.
Houston actually stated was that Plaintiff's "waxing and waning
of symptoms . . . seems to follow a residual disease process
concept" and that Plaintiff "fits in [the] ballpark" of "marginal
adjustments."  (Tr. 69.)  Significantly, Dr. Houston did not
testify that "even a minimal increase in mental demands or change
in the environment would be predicted to cause [Plaintiff] to
decompensate" 404 C.F.R. pt. 404, subpt. P, app. 1, § 12.04(c);
rather, Dr. Houston testified that Plaintiff never had episodes
of decompensation of extended duration (Tr. 67).

Furthermore, as set forth by the Commissioner in his answer
brief (Doc. 13, at 13-17), other evidence in the record supports
the ALJ's finding regarding whether Plaintiff met a listed
impairment.  Such evidence includes - as noted by the ALJ - that

Plaintiff was no longer on medication in late 2008 yet was doing well - evidence that belies the notion that he had achieved only a precarious "marginal adjustment" and was on the verge of decompensation with only slight changes in his environment or medication, as required by the "C" criteria.

As a result, the court concludes that substantial evidence supported the ALJ's decision that Plaintiff's impairments did not meet or equal the requirements of a listed impairment, and that that decision was free of reversible legal error.[3]

### B.  Treating Physician

Plaintiff challenges the ALJ's evaluation of the opinions of Drs. Bryan and Mansfield, Plaintiff's treating physicians.

> In deciding how much weight to give a
> treating source opinion, an ALJ must first
> determine whether the opinion qualifies for
> controlling weight.  To make this
> determination, the ALJ . . . must first
> consider whether the opinion is
> well[]supported by medically acceptable
> clinical and laboratory diagnostic
> techniques.  If the answer to this question

---

[3]Plaintiff contends that the ALJ committed reversible error because "there is sufficient evidence in the record to create a question as to whether [Plaintiff] meets Listing 12.04" and "there is nothing in the ALJ findings that conclusively negates the possibility that [Plaintiff] meets" the criteria of the listing.  (Doc. 12, at 10.)  In making this argument, Plaintiff appears to misunderstand this court's role.  Under the applicable standard of review, this court focuses on whether substantial evidence supports the ALJ's actual finding, regardless of whether the evidence might have also supported a different finding.  *See* *Lax*, 489 F.3d at 1084.  "In reviewing the ALJ's decision, [this court may] neither reweigh the evidence nor substitute its judgment for that of the [ALJ]."  *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006 (quotations and citation omitted).

is "no," then the inquiry at this stage is
complete.  If the ALJ finds that the opinion
is well[]supported, he must then confirm that
the opinion is consistent with other
substantial evidence in the record.  If the
opinion is deficient in either of these
respects, then it is not entitled to
controlling weight.

        Even if a treating physician's opinion
is not entitled to controlling weight,
treating source medical opinions are still
entitled to deference and must be weighed
using all of the factors provided in [20
C.F.R. §] 404.1527.  Those factors are: (1)
the length of the treatment relationship and
the frequency of examination; (2) the nature
and extent of the treatment relationship,
including the treatment provided and the kind
of examination or testing performed; (3) the
degree to which the physician's opinion is
supported by relevant evidence; (4)
consistency between the opinion and the
record as a whole; (5) whether or not the
physician is a specialist in the area upon
which an opinion is rendered; and (6) other
factors brought to the ALJ's attention which
tend to support or contradict the opinion.

        Under the regulations, the agency
rulings, and [Tenth Circuit] case law, an ALJ
must give good reasons . . . for the weight
assigned to a treating physician's opinion .
. . that are sufficiently specific to make
clear to any subsequent reviewers the weight
the adjudicator gave to the treating source's
medical opinion and the reason for that
weight.  If the ALJ rejects the opinion
completely, he must then give specific,
legitimate reasons for doing so.

*Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004)

(quotations and citations omitted) (sixth alteration in

original); *see also* 20 C.F.R. § 404.1527(d).

As with other evidentiary matters, when an ALJ is considering medical opinion evidence, it is the ALJ's role to weigh and resolve evidentiary conflicts and inconsistencies. *See, e.g., Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000); *Eggleston v. Bowen*, 851 F.2d 1244, 1247 (10th Cir. 1988). In addition, any opinion that a claimant is disabled "is not dispositive because final responsibility for determining the ultimate issue of disability is reserved to the [Commissioner]." *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994); *see also*, 20 C.F.R. § 404.1527(e).

Plaintiff complains that the ALJ did not expressly state what weight he gave to the following opinions of Dr. Bryan: (1) Plaintiff could stand/walk for four hours at a time (stand for two hours and walk for two hours); (2) he could sit for two hours at a time; and (3) he could never squat or crawl. (Doc. 12, at 11 (citing Tr. 294).) As to the first opinion, however, the ALJ plainly adopted Dr. Bryan's view. The ALJ expressly mentioned this opinion and the ALJ's RFC assessment was consistent with this opinion (Tr. 19). The ALJ's finding that Plaintiff could stand/walk for three to four hours at a time was essentially the same as Dr. Bryan's opinion that Plaintiff could stand/walk for four hours at a time (Tr. 17). Thus, there was no prejudicial error with respect to that opinion.

As for Dr. Bryan's opinion that Plaintiff could sit for only two hours at a time, the ALJ did not afford controlling weight to

that opinion, given that the ALJ expressly mentioned that opinion
and given that the ALJ found that Plaintiff could sit for three
to four hours at a time (Tr. 17, 19).  Of course, the difference
between Dr. Bryan's opinion and the ALJ's finding was not
significant (about one hour).

In any event, any error in the ALJ's failure to explain why
he did not fully adopt Dr. Bryan's opinion on this point was
harmless.  The ALJ ultimately found, based on the vocational
expert's testimony, that Plaintiff could perform his past work as
a security guard and sales representative, which constituted
light work (Tr. 20).  Light work does not require sitting for
more than two hours per day (total), and sitting generally occurs
only intermittently during the day.  *See* SSR 83-10, 1983 WL
31251, at *6.  Thus, even if the ALJ had adopted Dr. Bryan's view
that Plaintiff could not sit for more than two hours at a time,
the vocational expert and the ALJ would have still found that
Plaintiff could do his past light work.  Therefore, the alleged
error did not prejudice Plaintiff.  *See Allen v. Barnhart*, 357
F.3d 1140, 1145 (10th Cir. 2004) (holding that the principle of
harmless error applies to Social Security disability cases); *St.
Anthony v. U.S. Dep't of Health and Human Servs.*, 309 F.3d 680,
691 (10th Cir. 2002) ("[T]he party challenging the action below
bears the burden of establishing that the error prejudiced the
party."); *see also Shinseki v. Sanders*, 129 S. Ct. 1696, 1706
(2009) (recognizing that "the burden of showing that an error is

14

harmful normally falls upon the party attacking the agency's determination").

Furthermore, Plaintiff's past work did not require any squatting or crawling. *See* DOT #372.667-034, 1991 WL 673100 (security guard); DOT #279.357-014, 1991 WL 672538 (sales representative). Thus, the ALJ's decision not to adopt Dr. Bryan's prohibition on those activities did not affect his conclusion that Plaintiff could do his past work. Plaintiff, therefore, has failed to establish prejudicial error with respect to Dr. Bryan's opinions.

Regarding Dr. Mansfield, the ALJ gave much weight to Dr. Mansfield's treatment notes, but the ALJ declined to give significant weight to the doctor's January 2009 opinion (on the check-the-box form) that Plaintiff had various extreme limitations precluding all work (Tr. 19). The ALJ gave several specific, legitimate reasons for his decision.

First, the ALJ explained that Dr. Mansfield's 2009 form opinion "clearly contradict[ed] the notes in the treatment records in which he passed the physical examinations several times with normal findings during the relevant period." (Tr. 19.) The ALJ's reasoning is supported by the record. Regarding Plaintiff's mental impairments, Dr. Mansfield's treatment records showed that, while Plaintiff continued to carry diagnoses of mental impairments and took relevant medication at times, his functioning was mostly normal (*i.e.*, there was little indication

15

of mental limitations) (Tr. 373-84).  In fact, as the ALJ

observed, Dr. Mansfield found that, by November 2008, Plaintiff

was off psychiatric medications and doing well (Tr. 16, 373).

This November 2008 treatment record was Dr. Mansfield's most

recent note before he completed the 2009 form, in which he

suddenly opined that Plaintiff had extreme functional

limitations.

Regarding Plaintiff's physical impairments, Dr. Mansfield's

examinations (from 2006 through 2008) consistently revealed

mostly normal findings, including only mild back problems (mild

degenerative disease, no radicular pain and normal straight leg

raise tests) (Tr. 277, 278, 279, 280, 373-84).  In fact, over

this time, Plaintiff rated his back pain as mild (ranging from 0

to 4 on the pain scale), and he reported that his back

medications were "very helpful in controlling his back spasms"

(Tr. 277; *see also* 255, 260, 267, 270).  In the fall of 2008, Dr.

Mansfield noted that Plaintiff passed his physical examination

(*i.e.,* the examination was "normal") in preparation for joining

the National Guard (Tr. 375-77).[4]  Dr. Mansfield also noted that

_____

[4]Plaintiff erroneously asserts that the fact that the
National Guard did not accept him "indicates that the results of
his physicals demonstrated that he was not able to work." (Doc.
12, at 13.)  On the contrary, he admitted to Dr. Mansfield that
the National Guard did not accept him because he "carries a
diagnosis of bipolar disorder," not due to any physical problem
(Tr. 373).

Plaintiff's sleep apnea was being treated by a full face C-PAP mask, which apparently was a new development (Tr. 373).

Thus, as the ALJ found, Dr. Mansfield's treatment notes did not support the extreme limitations he identified on the form he completed for Plaintiff's disability attorney. *See Castellano,* 26 F.3d at 1029 (ALJ may properly discount treating physician's opinion that is not supported by his notes and is merely conclusory); 20 C.F.R. § 404.1527(d)(2)-(4) (ALJ should consider if an opinion is well supported, as well as its consistency with other evidence); *see also White v. Barnhart*, 287 F.3d 903, 907-08 (10th Cir. 2002) (treating physician's opinion may be rejected where the physician did not explain the reasons for new limitations mentioned in a later assessment).

The ALJ also explained that Dr. Mansfield's 2009 form opinion "also contradict[ed] the opinion of the treating orthopedic doctors and the agency reviewing specialists" (Tr. 19), for the opinions of Dr. Bryan, the state agency medical experts, and the MRI results showing only mild back problems (Tr. 19, *see* Tr. 283, 326-33), were inconsistent with Dr. Mansfield's 2009 form opinion. *See* 20 C.F.R. § 404.1527(d)(4); *Eggleston v. Bowen*, 851 F.2d 1244, 1247 (10th Cir. 1988). Plaintiff challenges the ALJ's weighing of Dr. Mansfield's opinion against the other doctors' opinions (Doc. 12, at 13-14); however, Plaintiff is essentially asking this court to reweigh the evidence, which the court may not do. *See Oldham*, 509 F.3d at 1257 ("To the extent

that [plaintiff] is asking this court to reweigh the evidence, we cannot do so.")  This court may only review the sufficiency of the evidence, not its weight.  *See id.*  The court concludes that the evidence was sufficient to support the ALJ's assessment of both Dr. Mansfield's and Dr. Bryan's opinions.

### C. RFC Analysis

The court next turns to Plaintiff's argument that the ALJ's RFC assessment failed to account for Plaintiff's alleged hearing impairment and sleep apnea.  (Doc. 12, at 14-16.)

The Commissioner contests Plaintiff's argument by arguing that although Plaintiff referred to a hearing impairment or a functional limitation related to his hearing in the initial documents he completed when applying for benefits, Plaintiff effectively abandoned this allegation before the ALJ.  (Doc. 13, at 22.)  At the administrative hearing, the ALJ asked Plaintiff's counsel to discuss the impairments that contributed to Plaintiff's alleged disability.  Plaintiff's counsel did not mention a hearing impairment (Tr. 29-31).  Further, Plaintiff's counsel did not question Plaintiff about a hearing impairment at the administrative hearing.  (Tr. 34-48.)  In fact, Plaintiff did not testify to any hearing problems at all.  Thus, the Commissioner argues, the ALJ's decision not to include hearing limitations in the RFC assessment was not surprising, but was actually entirely reasonable and consistent with Plaintiff's testimony and arguments at the administrative hearing.

In a similar case, the Tenth Circuit rejected such belated attempts to rely on alleged impairments that were not alleged at the administrative hearing. *See Wall v. Astrue*, 561 F.3d 1048 (10th Cir. 2009). In *Wall*, the claimant "never alleged that she suffered from a severe mental disability at her administrative hearing," *Id.* at 1062. Also, "[a]lthough the ALJ gave Claimant's counsel several opportunities to develop Claimant's case, Claimant's counsel also failed to raise the issue of a severe cognitive impairment or suggest that the record required development in that regard." *Id.* The Tenth Circuit emphasized that "an ALJ is generally entitled to 'rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored.'" *Id.* (quoting *Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004)). Because "nothing justifie[d] excusing Claimant's counsel from this important duty," the court held that "the ALJ exercised good judgment in refusing to delve more deeply into the mental impairments that Claimant now emphasizes on appeal." *Id.*; *see also id.*, at 1063 ("an ALJ's duty to develop the record is *not* unqualified") (emphasis in original). The Tenth Circuit concluded that, because neither the claimant nor her counsel claimed at the hearing that a mental impairment contributed to her inability to work, "the ALJ could reasonably assume" that claimant's alleged mental impairment "had 'no bearing on the

question of [her] alleged disability.'" *Id.* at 1063 (quoting *Chambers v. Barnhart*, 389 F.3d 1139, 1144 (10th Cir. 2004)).

The same analysis applies to Plaintiff's case. Because neither Plaintiff nor his counsel claimed at the administrative hearing that a hearing impairment contributed to his alleged inability to work, the ALJ acted reasonably in declining to include hearing limitations in Plaintiff's RFC assessment. To remand this case under these circumstances would be to reward claimants who omit discussion of their alleged impairments at the administrative hearing and thereby inject alleged error into the administrative decision, providing claimants inappropriate incentives.

Furthermore, as the Commissioner sets forth in his answer brief (Doc. 13, at 23-25), substantial evidence supports the ALJ's decision. Dr. Gonzales' examination revealed no noticeable hearing impairment (Tr. 340), and Dr. Taggart opined that Plaintiff did not have hearing loss that would affect his work-related functioning (Tr. 330). In addition, Plaintiff does not cite any objective evidence or medical diagnoses of hearing loss to support his argument, but instead only cites to pages in the record referencing Plaintiff's subjective allegations of hearing loss. (Doc. 12, at 15; *see also* Doc. 13, at 23-24.)

Regarding Plaintiff's sleep apnea, the ALJ acknowledged that it was a medically determinable impairment (Tr. 14). The ALJ also accounted for functional problems caused by the sleep

disorder by including in Plaintiff's RFC assessment various mental limitations, such as (1) mild to moderate limitations in concentration and in the ability to handle stress; and (2) mild limitations in the ability to deal with work production and relate to others (Tr. 17). The ALJ found Plaintiff's other, more restrictive limitations not credible (Tr. 18-19, 41), *see Talbot v. Heckler*, 814 F.2d 1456, 1461 (10th Cir. 1987) (the fact that the ALJ must consider the claimant's evidence does not mean that he must accept it as true), and Plaintiff has not challenged the ALJ's adverse credibility finding, and thus waived any such challenge. *See Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) (court "routinely [has] declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief"); *see also Broadbent v. Harris*, 698 F.2d 407, 413 (10th Cir. 1983) (explaining that because the determination of credibility is left to the ALJ as the finder of fact, that determination is generally binding on the reviewing court).

Therefore, the court concludes that Plaintiff has not demonstrated error, much less reversible error, regarding his alleged hearing impairment and sleep disorder.

### D. Hypothetical Question

Finally, Plaintiff's challenge of the ALJ's hypothetical question to the vocational expert is merely a rehash of his challenge to the ALJ's RFC assessment. (Doc. 12, at 16-17.) Because substantial evidence supports the ALJ's assessment, and

because that assessment matched the hypothetical question to the expert, the ALJ did not err. *Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000) ("The ALJ propounded a hypothetical question to the VE that included all the limitations the ALJ ultimately included in his RFC assessment. Therefore, the VE's answer to that question provided a proper basis for the ALJ's disability decision.").

Having carefully considered the parties' memoranda and the complete record in this matter, the court concludes that the ALJ's decision is supported by such relevant evidence as a reasonable mind might accept as adequate to support the ALJ's conclusion. Because the court concludes that the ALJ's decision is supported by substantial evidence and is free of reversible legal error, that decision is affirmed. *See Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000).

**ORDER**

Based on the above analysis, **IT IS HEREBY ORDERED** that the Commissioner's decision is **AFFIRMED** because it is supported by substantial evidence and is free of reversible legal error.

DATED this 12th day of July, 2011.

BY THE COURT:

_____
Samuel Alba
United States Magistrate Judge